**J. C. CHILDS, Individually and as Next Friend of Daisy Childs, his wife, Appellant,**

v.

**Dr. C. B. WEIS, Appellee.**

No. 17250.

Court of Civil Appeals of Texas.

Dallas.

March 28, 1969.

Rehearing Denied April 25, 1969.

Dan R. McCormack, Dallas, for appellant.

John Copeland, of Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

J. C. Childs, in his individual capacity and as next friend of his wife, Daisy Childs, brought this action against Greenville Hospital Authority, H. Beckham, a nurse, and Dr. C. B. Weis, in which he sought recovery of damages for personal injuries to Daisy Childs and for the death of their minor child, Wendy Elaine Childs. Plaintiff alleged that the Hospital Authori-ty, the nurse and the doctor were negligent, inter alia, in failing to provide adequate medical care and attention to plaintiff's wife and that as a proximate result of such negligent acts plaintiff's wife sustained personal injuries and her newborn infant died twelve hours following birth. Dr. Weis filed his motion for summary judgment, supported by affidavits and request for admissions of fact on file. The trial court sustained the motion and granted a take nothing judgment in favor of Dr. Weis. In the same decree the court severed the cause of action asserted against the Hospital Authority and the nurse. From this judgment Childs has perfected this appeal.

All of the summary judgment evidence which appears in this record may be summarized as follows:

On or about November 27, 1966 Daisy Childs, wife of J. C. Childs, a resident of Dallas County, was approximately seven months pregnant. On that date she was visiting in Lone Oak, Texas, and about two o'clock A.M. she presented herself to the Greenville Hospital emergency room. At that time she stated she was bleeding and had labor pains. She was examined by a nurse who identified herself as H. Beckham. According to Mrs. Childs Nurse Beckham stated that she would call the doctor. She said the nurse returned and stated "that the Dr. said that I would have to go to my doctor in Dallas. I stated to Beckham that I'm not going to make it to Dallas. Beckham replied that yes, I would make it. She stated that I was just starting into labor and that I would make it. The weather was cold that night. About an hour after leaving the Greenville Hospital Authority I had the baby while in a car on the way to medical facilities in Sulphur Springs. The baby lived about 12 hours."

Dr. Weis, in his affidavit, stated that he was duly licensed to practice medicine in the State of Texas and lived in Greenville, Hunt County, Texas. He said that he had

never examined or treated Daisy Childs and in fact had never seen or spoken to either Daisy Childs or her husband, J. C. Childs, at any time in his life. He further stated that he had never at any time agreed or consented to the examination or treatment of either Daisy Childs or her husband. He said that on a day in November 1966 he recalled a telephone call received by him from a nurse in the emergency room at the Greenville Surgical Hospital; that the nurse told him that there was a negro girl in the emergency room having a "bloody show" and some "labor pains". He said the nurse advised him that this woman had been visiting in Lone Oak, and that her OB doctor lived in Garland, Texas, and that she also resided in Garland. The doctor said, "I told the nurse over the telephone to have the girl call her doctor in Garland and see what he wanted her to do. I knew nothing more about this incident until I was served with the citation and a copy of the petition in this lawsuit."

In response to request for admissions of fact the Greenville Hospital Authority answered that Dr. C. B. Weis was a member of the medical staff of the hospital; that the hospital gives no specific instructions to doctors who are serving on the emergency service of the institution; that the hospital does not require that the physicians who are on emergency service agree to see all patients who present themselves at the emergency room and that the hospital does not require that a physician actually see all patients who arrive for treatment at the emergency room.

Appellant seeks reversal of the trial court's judgment based upon three points of error. In two points he contends that the summary judgment was improperly granted because the evidence raises a question of fact as to whether the doctor-patient relationship was established and if so whether the doctor was negligent in failing to personally examine Daisy Childs and give her proper treatment and also whether he was negligent in instructing her to go

to her doctor in Dallas after learning of her condition. In the third point appellant argues that Nurse Beckham was the agent of the doctor and that the facts present an issue concerning her negligence for which the doctor would be legally responsible.

■ Appellant's effort to establish vicarious liability against Dr. Weis for the alleged acts of Nurse Beckham must fail because of complete lack of evidence of principal-agent relationship between the doctor and the nurse. In his petition appellant alleges that Nurse Beckham was the agent, servant and employee of the hospital "and/or" Dr. Weis. However, a careful examination of all of the summary judgment evidence before us fails to disclose even a scintilla of evidence which would establish such alleged relationship between Dr. Weis and Nurse Beckham. Accordingly, appellant's contention based upon this argument is overruled.

The cardinal question presented by appellant's two main points is the existence *vel non* of a patient-physician relationship between Dr. Weis and appellant's wife. Appellant earnestly contends that the summary judgment evidence creates an issue of fact as to whether the patient-physician relationship came into being. Appellee responds with the argument that he has assumed his negative burden imposed by summary judgment procedure of demonstrating as a matter of law that the patient-physician relationship did not exist and therefore appellant could not legally prevail in his suit. We agree with appellee.

■ The *sine qua non* of appellant's cause of action against Dr. Weis is the existence of a duty on the part of Dr. Weis to do those things that an ordinarily prudent physician would do, or refrain from doing that which an ordinarily prudent physician would not do, in the proper care and treatment of his patient. The existence of the duty must flow from the relationship of patient-physician. The relation

of physician and patient is contractual and wholly voluntary, created by agreement, express or implied. 45 Tex.Jur.2d, § 100, p. 261 and § 102, p. 265. It is the law of this state that aside from the provisions of the statutes, the rights, duties and liabilities of practitioners of the healing arts are governed by the law applicable to persons generally. A physician is under no legal obligation to practice his profession or render services to whomsoever may request them. Urrutia v. Patino, 297 S.W. 512 (Tex.Civ.App., San Antonio 1927, second appeal 10 S.W.2d 582, writ dism'd). In Lotspeich v. Chance Vought Aircraft, 369 S.W.2d 705 (Tex.Civ.App., Dallas 1963, writ ref'd n. r. e.), we had occasion to discuss the contractual relationship of physician and patient. There the employer contracted with the physician to examine the employee, such examination being wholly for the benefit of the company. The employee did not select the doctor nor contract for the examination and hence there was no duty on the doctor to do anything except to perform efficiently the work the company had employed him to do. Absent the existence of a duty there was no legal basis for a cause of action against the doctor for failure to advise the employee concerning findings made by the doctor during the examination.

■ Since it is unquestionably the law that the relationship of physician and patient is dependent upon contract, either express or implied, a physician is not to be held liable for arbitrarily refusing to respond to a call of a person even urgently in need of medical or surgical assistance provided that the relation of physician and patient does not exist at the time the call is made or at the time the person presents himself for treatment. 70 C.J.S. Physicians and Surgeons §§ 37, 48b and 52; 41 Am.Jur., Physicians and Surgeons, § 71, and cases therein cited.

The rule was aptly stated by the court in Agnew v. Parks, 172 Cal.App.2d 756, 343 P.2d 118 (1959), as follows:

"Absent a showing in her complaint that any doctor had previously been retained by plaintiff to examine or treat her, we are faced with the question whether a doctor, who has no relationship with a person growing out of contract to examine or treat, has a duty to enter into an agreement to render services as a medical expert merely upon request. We hold that he does not. Even the Hippocratic Oath, by which every doctor is morally bound, assumes a pre-existing relationship of patient and physician, which relationship in its inception is basically contractual and wholly voluntary, created by agreement, express or implied, and which by its terms may be general or limited."

■ Applying these principles of law to the factual situation here presented we find an entire absence of evidence of a contract, either express or implied, which would create the relationship of patient and physician as between Dr. Weis and Mrs. Childs. Dr. Weis, under these circumstances, was under no duty whatsoever to examine or treat Mrs. Childs. When advised by telephone that the lady was in the emergency room he did what seems to be a reasonable thing and inquired as to the identity of her doctor who had been treating her. Upon being told that the doctor was in Garland he stated that the patient should call the doctor and find out what should be done. This action on the part of Dr. Weis seems to be not only reasonable but within the bounds of professional ethics.

We cannot agree with appellant that Dr. Weis' statement to the nurse over the telephone amounted to an acceptance of the case and affirmative instructions which she was bound to follow. Rather than give instructions which could be construed to be in the nature of treatment, Dr. Weis told the nurse to have the woman call her physician in Garland and secure instructions from him.

The affidavit of Mrs. Childs would indicate that Nurse Beckham may not have relayed the exact words of Dr. Weis to Mrs. Childs. Instead, it would seem that Nurse Beckham told Mrs. Childs that the doctor said that she would "have to go" to her doctor in Dallas. Assuming this statement was made by Nurse Beckham, and further assuming that it contained the meaning as placed upon it by appellant, yet it is undisputed that such words were uttered by Nurse Beckham, and not by Dr. Weis. As stated above, in the absence of any evidence showing the relationship of principal and agent as between Dr. Weis and Nurse Beckham, anything said or done by Nurse Beckham cannot legally be imputed to Dr. Weis. Moreover, it is interesting to note that apparently Mrs. Childs did not interpret the relayed words to be in the nature of treatment by a doctor who had accepted the responsibility of treating her case for the simple reason that she was in the act of traveling toward Sulphur Springs not Dallas or Garland, when the birth occurred.

We have carefully reviewed this record in the light of the well established rules concerning judicial review of summary judgments and having done so we conclude that appellee has sustained his burden of demonstrating the nonexistence of issuable facts and that appellant could not recover against him, as a matter of law.

In addition to the above another reason is apparent from the record why the judgment must be affirmed. Prior to the hearing on Dr. Weis' motion appellant requested the court to continue the hearing so that the deposition of Nurse Beckham could be taken. In such motion appellant said: "Defendant Beckham's deposition is necessary in order for plaintiff to meet defendant Weis' affidavit in his motion for summary judgment." The court granted appellant's motion and the record reveals that Nurse Beckham's deposition was taken and attached as a part of her own motion for summary judgment which was before the court.

The court's judgment recites that the court considered "the pleadings, affidavits and depositions on file herein," in rendering judgment for appellee Dr. Weis.

The deposition of Nurse Beckham has not been brought forward as a part of this record. Such being true we are confronted by an incomplete record. In such a case we are required to assume that the omitted portions of the record support the judgment and establish its propriety. Torrey v. Cameron, 73 Tex. 583, 11 S.W. 1088 (1889); Alexander v. Bank of American National Trust & Savings Ass'n, 401 S.W.2d 688 (Tex.Civ.App., Waco 1966, writ ref'd n.r.e.); Shanken v. Lee Wolfman, Inc., 370 S.W.2d 197 (Tex.Civ.App., Houston 1963, writ ref'd n.r.e.); and McFarland v. Connally, 252 S.W.2d 486, 488 (Tex.Civ.App., Fort Worth 1952, no writ).

All of appellant's points of error have been considered and are overruled. The judgment of the trial court is

Affirmed.