**Richard FOUGHT, Appellant,**

**v.**

**David A. SOLCE, D.O., Appellee.**

**No. 01-90-00737-CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 30, 1991.

Rehearing Overruled Sept. 26, 1991.

Jay L. Winckler, Austin, for appellant.

John D. Ellis, Houston, for appellee.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

HUGHES, Justice.

Can a telephone call between two doctors create a patient-physician relationship between one of the doctors and a person whom the doctor does not know, has not spoken with, and has not treated? The trial court rendered final summary judg-

ment in favor of the defendant, David A. Solce, D.O., in this medical malpractice case.

We affirm.

Richard Fought, appellant, was involved in a vehicular accident while riding his motorcycle on March 24, 1984. The other person involved in the accident fled the scene. A Houston Fire Department paramedic team took Fought to Eastway General Hospital (Eastway) for emergency treatment. Dr. Gregory Hall was the emergency room physician who first saw Fought. Hall diagnosed Fought as having suffered a fracture of the left distal femur and compound fractures of the left midtibia and fibula. After stabilizing Fought's condition, Hall determined that he would need to consult with an orthopedic specialist concerning further treatment.

Solce was the orthopedic specialist on call on the day of Fought's accident. Hall called Solce twice at his home to discuss Fought's condition. On both occasions, Solce, was asked, but, declined to come to the hospital and examine Fought. Fought was later transferred to York Plaza Hospital, and then to the Veterans Administration Hospital. After several operations, his left leg was amputated below the knee due to infection.

Fought sued Eastway, Hall, and Solce, alleging that the delay in treatment to his injuries caused his leg to be amputated. Both Eastway and Hall have settled with Fought. Fought asserts as his sole point of error that there exists a fact issue concerning whether Solce had a duty to render services to Fought, and whether that duty was breached.

Because this is a summary judgment appeal, the standard of review is whether Solce established that no issue of material fact existed, thereby entitling him to a judgment as a matter of law. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Conflicts in the evidence are disregarded, the proof that tends to support the position of the party opposing the motion is accepted as true, and all doubts as to the genuine issue of material facts are resolved against the movant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965); *Ginter v. Taub*, 570 S.W.2d 516, 519 (Tex.App.—Waco 1978, writ ref'd n.r.e.).

Hall's deposition affirms that Solce declined to see Fought. Hall stated he believed one of Solce's concerns was that Fought had no proof of medical insurance. Solce contends that he refused to establish a patient-physician relationship with Fought because, after hearing of the type of injuries Fought had suffered, he determined Fought would be better served by a hospital with a trauma unit.

We are left with but one issue. Can an individual prosecute a cause of action against a physician for medical malpractice where a patient-physician relationship had not been established.

There are four elements that must be proven to prevail on a medical malpractice cause of action: 1) a duty by the physician to act according to certain standards; 2) a breach of the applicable standard of care; 3) an injury; and 4) a causal connection between the breach of care and the injury. *White v. Wah*, 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ). A defendant is entitled to prevail on a motion for summary judgment if he establishes, as a matter of law, that at least one essential element of plaintiff's cause of action does not exist. *Id.*

In this case, the summary judgment does not state the specific ground on which it was granted. Typically, therefore, we would look to each of the independent arguments alleged in the motion and determine whether they are sufficient to support the order. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). However, Solce states but one ground in his motion for summary judgment. That is the absence of duty.

Under our common law, a physician can be held liable for his negligence only where a physician-patient relationship exists. *Johnson v. Sibley,* 558 S.W.2d 135, 137 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). Absent an agreement between a physician and an individual, the physician has no duty to treat the individual. *Salas v. Gamboa,* 760 S.W.2d 838, 841 (Tex. App.—San Antonio 1988, no writ); *Childs v. Weis,* 440 S.W.2d 104, 106–107 (Tex.Civ. App.—Dallas 1969, no writ). The court in *Childs* stated the law thus:

> The sine qua non of appellant's cause of action against Dr. Weis is the existence of a duty on the part of Dr. Weis to do those things that an ordinarily prudent physician would do, or refrain from doing that which an ordinarily prudent physician would not do, in the proper care and treatment of his patient. The existence of the duty must flow from the relationship of patient-physician. The relationship of physician and patient is contractual and wholly voluntary, created by agreement, expressed or implied....
>
> Since it is unquestionably the law that the relationship of physician and patient is dependent upon contract, either express or implied, *a physician is not to be held liable for arbitrarily refusing to respond to a call of a person even urgently in need of medical or surgical assistance provided that the relation of physician and patient does not exist at the time the call is made or at the time the person presents himself for treatment.*

*Childs,* 440 S.W.2d at 106–107 (emphasis added).

It is undisputed that no prior physician-patient relationship existed between Solce and Fought. Moreover, we hold, the fact that Solce volunteered to be "on call" does not in itself impose any duty. Solce was under no contractual obligation with Eastway to be "on call," nor was he required to be "on call" to maintain staff privileges. Therefore, no cause of action for medical malpractice can exist under our common law.

Fought contends, notwithstanding the common law rule, Solce's refusal to treat him constituted negligence per se. This assertion is based on his allegation that Solce violated Tex.Rev.Civ.Stat.Ann. art. 4438a.[1] Article 4438a provided, at the time of the events in question:

> No officer, employee or member of the hospital medical staff of a general hospital shall deny emergency services available at the hospital to a person diagnosed by a licensed physician as requiring emergency services because the person is unable to establish his ability to pay for the services or because of race, religion, or national ancestry. In addition, the person needing the services may not be subjected to arbitrary, capricious, or unreasonable discrimination based upon age, sex, physical condition or economic status.
>
> In this Act, "emergency services" means services that are usually and customarily available at the respective hospital and that must be provided for immediately to sustain a person's life, to prevent serious permanent disfigurement or loss or impairment of a bodily member or organ ...

The article was enacted to prevent patient dumping by hospitals. It imposes criminal penalties for violation of its precepts, and was first enacted by the 1975 legislature. We are unaware of any instance where a court has bestowed upon a plaintiff a civil cause of action based on the alleged violation of this state's patient dumping statute.

However, in support of his position, appellant has offered three opinions from two Texas appellate courts: *Valdez v. Lyman-Roberts Hospital, Inc.,* 638 S.W.2d 111 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Brownsville Medical Center v. Gracia,* 704 S.W.2d 68 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); and *Ortiz v. Santa Rosa Medical Center,* 702 S.W.2d

1. Act of June 17, 1983, 68th Leg., R.S., ch. 388, § 1, 1983 Tex.Gen.Laws 2137, *repealed and codified by* Act of June 14, 1989, 71st Leg., R.S., ch. 678, §§ 1, 13, 1989 Tex.Gen.Laws 2230, 2584, 3165. (Current version at Tex.Health & Safety Code Ann. § 311.022 (Vernon Pamph.1991)).

701 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Appellant insists that the holdings in these cases stand for the proposition that a civil suit may go forward against hospitals and doctors that refused to admit patients because of their inability to pay.[2]

In *Valdez,* the appellate court was asked to review whether the trial court had correctly issued an instructed verdict that the negligence of two *hospitals* was not the proximate cause of a patient's death. *Valdez,* 638 S.W.2d at 114. In this case, we have only been asked to determine appellee's liability. Therefore, the case is not dispositive of the issue before this Court. Appellant's reliance on *Brownsville* is also misplaced. The facts in that case were such that a physician-patient relationship existed, and the patient had been admitted into the hospital, at the time of the doctor's alleged negligence. *Brownsville,* 704 S.W.2d at 71.

In *Ortiz,* the defendant doctor stipulated to the plaintiff's allegation of negligence. *Ortiz,* 702 S.W.2d at 703. He argued that his negligence was not the proximate cause of the patient's death. *Id.* at 704. Consequently, the issue before this court was not addressed. Therefore, *Ortiz* is not dispositive.

Moreover, the mere fact that the legislature adopts a criminal statute does not mean that an appellate court must accept it as a standard for civil liability. *Carter v. William Somerville and Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979). When determining civil matters, we may accept or reject the criminal statute or use such part thereof that we deem appropriate for our purposes. *Rudes v. Gottschalk,* 159 Tex. 552, 556, 324 S.W.2d 201, 205 (1959). Justice Norvell, writing for the court in *Rudes* noted that *"in the usual negligence per se case we are concerned with alleged conduct which would be considered substandard even in absence of the statute."* *Id.* 324 S.W.2d at 204. (emphasis added).[3]

That is not the case here. There is no question that the common-law standard imposed no civil duty on Solce to treat an individual with whom he had no prior physician-patient relationship. *Childs,* 440 S.W.2d at 106–107. We do not believe that it is the intent of our legislature that, by merely placing a telephone call to a doctor's home, one can impose a civil duty on that doctor to go to a hospital and give medical treatment to an individual whom he did not know. In reaching this conclusion, we note that the patient dumping statute has been with us for approximately 16 years, and during that period the legislature has been consistent in its expressed intent that violators be criminally sanctioned. Furthermore, the *Childs* case was decided some six years before legislative enactment of article 4438a. When asked to reconcile a legislative enactment with a procedured rule adopted by our supreme court, Justice Nye of the Corpus Christi Court of Appeals concluded:

> All statutes are presumed to be enacted by the Legislature with full knowledge of the existing condition of law and with reference to it. Statutes are to be construed in connection with, and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, that is, they are to be construed with reference to a whole system of law of which they form in part, includ-

2. Because Dr. Solce is the sole defendant remaining in this litigation, we need not, and do not, decide whether a party can assert a private cause of action against a hospital for the hospital's violation of the patient dumping statute.

3. We recognize that on occasion, our supreme court has created new concepts of duty based on violations of criminal statutes even though no duty previously existed under the common law. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 315 (Tex.1987) (alcoholic beverage licensee owes a duty to the general public not to serve alcoholic beverages to a person when the licensee knows or should know the patron is intoxicated). It is readily apparent that the citizens of this state need protection from intoxicated motorists. Furthermore, any entity that *undertakes* to serve alcoholic beverages should be made to face the consequences thereof. We find it equally true that a physician should not be subject to a medical malpractice suit until the physician undertakes to establish a patient-physician relationship.

ing reference to other statutes, rules of procedure, and decisions of the courts. *City of Ingleside v. Johnson,* 537 S.W.2d 145, 153 (Tex.App.—Corpus Christi 1976, no writ). We hold the above principle is equally applicable here. Had the legislature desired the patient dumping statute to have remedial consequences, it would have expressly said so.

Appellant's point of error is overruled, and the judgment is affirmed.