Pete ORTIZ, Individually, and As Next Friend of Joshua Ortiz Pickens, and As Administrator of the Estate of Ronald Ortiz, Deceased, Appellant,

v.

Daulat SHAH, M.D., Appellee.

No. 14–94–00123–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 8, 1995.

Rehearing Overruled Aug. 31, 1995.

Jerry L. Schutza, Houston, for appellant.

Spencer G. Markle, Lisa L. Cullaro, Houston, for appellee.

Before YATES, FOWLER and JUNELL,* JJ.

## OPINION

FOWLER, Justice.

This medical malpractice case comes to us on appeal as the result of a summary judgment in favor of appellee Daulat Shah, M.D. In one point of error, appellant claims the trial court erred in granting summary judgment because Dr. Shah had established a doctor-patient relationship with Ronald Ortiz and therefore had a duty to treat him in the emergency room. Because we find no doctor-patient relationship, and therefore no duty, we affirm the summary judgment.

* The Honorable William E. Junell sitting by as-    signment.

## THE FACTS

Ronald Ortiz ("Ronald") was brought into a hospital emergency room with a gunshot wound to the chest. Dr. Shah was the second surgeon "on call" for the evening. The emergency room nurse called the surgeon who was first on call, but he had an emergency at another hospital and could not come to the emergency room. The nurse then paged Dr. Shah. Dr. Shah returned the call; however, he was reluctant to come in, and argued a bit with the nurse about whether the first doctor was truly unavailable. However, within minutes Dr. Shah said he was on his way to the hospital. In the meantime, Ronald was treated in the emergency room and taken to surgery, where he died. Dr. Shah never saw or treated Ronald.

## PRIOR POSTURE

On Ronald's behalf, his family (collectively "Ortiz") sued the hospital, the nurses, the doctors who treated Ronald in the emergency room, the first on-call surgeon, and Dr. Shah. All other defendants except Dr. Shah settled or were dismissed from the suit, and the judgment is final as to all defendants. Dr. Shah is the only defendant at issue in this appeal.

Dr. Shah filed two motions for summary judgment, both of which the trial court granted. Dr. Shah first moved for summary judgment on the grounds that he had no doctor-patient relationship with Ronald which would give rise to a duty of care on which to base a negligence claim. Ortiz had two responses: (1) that Dr. Shah agreed to treat Ronald in the telephone conversation with the emergency room nurse when he said he was on his way; and (2) that Dr. Shah had a duty to Ronald because of Dr. Shah's agreement with the hospital that, when he was on call, he would come to the hospital within twenty minutes of being paged. The trial court granted the summary judgment in part, apparently concluding that the motion encompassed both a "tort claim" and a "third party beneficiary claim." On the judgment, the court wrote that she was granting the motion as to the "tort claim," but not as to the "third party beneficiary claim." Dr. Shah moved for summary judgment a second time, this time on the grounds that he had no contract with the hospital which would give rise to a third party beneficiary claim. The trial court granted the second summary judgment as well, and later incorporated the summary judgments into a final judgment. Although we are uncertain whether Ortiz is contesting only the granting of the first summary judgment motion, or whether his arguments pertain to both the telephone conversation and the hospital bylaws, we will address both motions because the Texas Rules of Appellate Procedure require us to liberally construe the brief. Tex.R.App.P. 74(p).

## STANDARD OF REVIEW

The movant for summary judgment must show that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We take evidence favorable to the non-movant as true, and indulge every reasonable inference in the non-movant's favor. *Id.* Summary judgment for the defendant is proper when the proof shows that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990); *White v. Wah*, 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ). In other words, a defendant must disprove, as a matter of law, one of the essential elements of a plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991).

## DISCUSSION

The plaintiff in a medical malpractice action must prove four elements: (1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *White*, 789 S.W.2d at 315; *Pinckley v. Gallegos*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). The issue of negligence is not before us in this case. Rather, the only issue is whether Dr. Shah had a doctor-patient relationship with Ronald which would give rise to a duty

to act according to a particular standard of care.

■ A physician may be held liable for medical negligence only when a doctor-patient relationship exists. *Fought v. Solce,* 821 S.W.2d 218 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Johnston v. Sibley,* 558 S.W.2d 135 (Tex.App.—Tyler 1977, writ ref'd n.r.e.). Without a doctor-patient relationship, there can be no duty. *Salas v. Gamboa,* 760 S.W.2d 838, 841 (Tex.App.— San Antonio 1988, no writ); *Childs v. Weis,* 440 S.W.2d 104, 106–07 (Tex.Civ.App.—Dallas 1969, no writ). A doctor-patient relationship is established as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill. *Salas,* 760 S.W.2d at 840; *Johnston,* 558 S.W.2d at 137; *Childs,* 440 S.W.2d at 106. The relationship is a consensual one and, when no prior relationship exists, the doctor must take some action to treat the patient before the relationship can be established. *See Lopez v. Aziz,* 852 S.W.2d 303, 306 (Tex. App.—San Antonio 1993, no writ) (holding there was no consensual doctor-patient relationship when the defendant doctor merely offered advice to a colleague, rather than to the patient). Merely volunteering to be "on call" at a hospital does not, in and of itself, establish a doctor-patient relationship. *Fought,* 821 S.W.2d at 220. *Cf. Hand v. Tavera,* 864 S.W.2d 678 (Tex.App.—San Antonio 1993, no writ) (holding that a doctor-patient relationship existed because of a prepaid health care contract under which the patient was a beneficiary).

### 1. The Telephone Conversation

Ortiz alleged two bases for finding that a duty existed as a result of a doctor-patient relationship. The first allegation that we will address is that a relationship was established when Dr. Shah agreed to go to the hospital to see Ronald Ortiz. Although Dr. Shah *did* agree to go to the hospital—after some discussion with the emergency room nurse about the availability of the surgeon who was first on call—this fact alone does not establish a doctor-patient relationship. When a doctor has no prior relationship with a patient, the doctor-patient relationship is not established until the doctor takes some affirmative action toward treatment of the patient. *Lopez,* 852 S.W.2d at 307.

Here, Dr. Shah never saw Ronald, never talked to him, and never gave any advice to anyone in the emergency room about him. *Cf. Pope v. St. John,* 862 S.W.2d 657 (Tex. App.—Austin 1993, writ granted) (holding doctor assumed a legal duty when he discussed case over the telephone with emergency room physician, and gave advice on how patient should be treated); *Wheeler v. Yettie Kersting Memorial Hosp.,* 866 S.W.2d 32 (Tex.App.—Houston [1st Dist.] 1993, no writ) (holding doctor-patient relationship established when doctor evaluated medical information about patient and made a medical decision about whether to transfer her to another hospital). Dr. Shah simply told the emergency room nurse he was on his way to the hospital. This act did not create a doctor-patient relationship.

### 2. The Hospital Bylaws and Policies

Ortiz looks to the hospital bylaws and policies for his second basis for liability. He argues that Dr. Shah agreed to treat Ronald Ortiz by agreeing to abide by the hospital bylaws and policies, and thereby established a doctor-patient relationship.[1] Thus, the threshold issue in this argument is whether Dr. Shah created a doctor-patient relationship merely by agreeing to be on call. We hold that he did not. Because no prior relationship existed, Dr. Shah would have had to take some affirmative action toward the treatment of Ronald Ortiz before a doctor-patient relationship would be created. *See Pope,* 862 S.W.2d at 661; *Lopez,* 852 S.W.2d at 306–07. As noted previously, Dr. Shah did not see or talk to Ronald, and did not give advice to anyone in the emergency room on how to treat Ronald.

Ortiz relies heavily on *Hand v. Tavera,* 864 S.W.2d 678 (Tex.App.—San Antonio 1993, no

---

1. In very general terms, these bylaws and policies state that a surgeon will actively participate in the hospital "emergency service program," that a general surgeon "must be within 20 minutes of the hospital when taking call," and that a general surgeon "must be available within 20 minutes while on call." Ortiz apparently takes the position that Dr. Shah was not at the hospital within twenty minutes, and therefore he breached his specific agreement to treat Ortiz.

**612**

writ), which we find distinguishable from the case before us. In *Hand,* the court found that a doctor-patient relationship was established by virtue of a contract between the doctor and a health maintenance organization to which the patient subscribed. Although they had no prior relationship, the court held that a doctor-patient relationship existed between the doctor and the insured, because the insured, who was enrolled in a prepaid medical plan, went to the emergency room and *consulted* the plan's designated doctor through personnel at the hospital. The defendant doctor discussed the patient's condition and treatment with emergency room personnel, and recommended a pain reliever. Thus, *Hand* did not involve a doctor who never saw or even consulted with anyone regarding the patient, as is the case in this appeal.

Ortiz also cites several out-of-state cases for the proposition that there is a trend toward imposing a duty on doctors who are "on call" to treat emergency patients.[2] However, we are bound to follow Texas law. Texas imposes a duty once the relationship is established, but no case has yet held that simply being on call establishes a relationship with any patient who comes into the emergency room. Unless the doctor commits some *affirmative act* that establishes the doctor-patient relationship, none is formed and the doctor has no duty to the patient. *See Pope,* 862 S.W.2d at 661.

In conclusion, we hold that Dr. Shah's summary judgment proof negated the first element of the plaintiff's cause of action— that Dr. Shah owed a duty to Ronald Ortiz— and that as a matter of law no doctor-patient relationship existed which would give rise to a duty. Therefore, we affirm the summary judgment in favor of Dr. Shah.

2. *See Citizens Hosp. Ass'n v. Schoulin,* 48 Ala. App. 101, 262 So.2d 303 (1972); *Thompson v. Sun City Community Hosp.,* 142 Ariz. 1, 688 P.2d 647 (1983), *aff'd in part, rev'd in part* 141 Ariz. 597, 688 P.2d 605 (1984); *Hiser v. Randolph,* 126 Ariz. 608, 617 P.2d 774 (1980); *Bourgeois v. Dade County,* 99 So.2d 575 (Fla.1956); *Hunt v. Palm Springs Gen. Hosp.,* 352 So.2d 582 (Fla.3d Dist. Ct.App.1977); *Williams v. Hosp. Auth. of Hall County,* 119 Ga.App. 626, 168 S.E.2d 336 (1969); *Noble v. Sartori,* 799 S.W.2d 8 (Ky.1990); *Hastings v. Baton Rouge Gen. Hosp.,* 498 So.2d 713 (La.1986); *O'Neill v. Montefiore Hosp.,* 11 A.D.2d 132, 202 N.Y.S.2d 436 (1st Dist.1960); *Methodist Hosp. v. Ball,* 50 Tenn.App. 460, 362 S.W.2d 475 (1961).