# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00248-CV

**Texas Department of Criminal Justice, Bryan Collier,
Bobby Lumpkin, and Kelly Strong, Appellants**

**v.**

**Anibal Canales and Ivan Cantu, Appellees**

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-007149, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

## O P I N I O N

The Texas Department of Criminal Justice (TDCJ) and three of its officials—executive director, Bryan Collier; director of the institutional division, Bobby Lumpkin; and senior warden of the Huntsville Unit, Kelly Strong (collectively, the TDCJ Officials)—appeal from the district court's order denying their plea to the jurisdiction asserting sovereign immunity. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing interlocutory appeal from order granting or denying plea to jurisdiction filed by governmental unit or its officials). Because we conclude that the appellees have failed to assert a valid ultra vires claim, we reverse and render judgment dismissing the suit for want of jurisdiction.

## BACKGROUND

Texas law provides that a death sentence shall be carried out "by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until

such convict is dead, such execution procedure to be determined and supervised by the director of the correctional institutions division of the Texas Department of Criminal Justice." Tex. Code Crim. Proc. art. 43.14(a). TDCJ's current protocol calls for an injection of a single dose of pentobarbital, which TDCJ purchases in vials compounded by pharmacies.[1] *See Wood v. Collier*, 836 F.3d 534, 537 (5th Cir. 2016) (describing Texas' use of compounded pentobarbital for executions). According to documents produced in discovery, TDCJ stores the vials of pentobarbital at the Huntsville Unit, which contains death row, for eventual use in executions.

In December 2022, two inmates awaiting execution sued the TDCJ and the TDCJ Officials (collectively, the TDCJ Defendants).[2] In their petition, the Plaintiffs allege that the TDCJ Defendants have violated certain statutes—the Texas Pharmacy Act; the Controlled Substances Act; the Texas Food, Drug, and Cosmetic Act; and the Texas Penal Code (collectively, the "Acts")—in their "compounding, procuring, possessing, distributing, and

---

[1] "Generally, drug compounding is the process by which a pharmacist mixes or alters drugs to create a medication that is tailored to the needs of an individual patient and that is not otherwise commercially available." *Randol Mill Pharmacy v. Miller*, 465 S.W.3d 612, 61718 (Tex. 2015). Compounding pentobarbital "involves dissolving an active ingredient – pentobarbital sodium salt powder – in a water-solvent solution. The mixture is processed into a liquid that can be injected." *Swearingen v. Collier*, No. 4:19-CV-3079, 2019 WL 3935285, at *1 n.3 (S.D. Tex. Aug. 20, 2019).

[2] The lawsuit was originally filed by inmates Wesley Ruiz and John Ballentine. Five other inmates awaiting execution—Robert Fratta, Arthur Brown, Gary Green, Anibal Canales, Jr., and Ivan Cantu—later intervened as plaintiffs. Of the seven plaintiffs and intervenor plaintiffs, all except Canales have been executed since the lawsuit was filed. In this opinion, we will refer to the original plaintiffs and the intervenors collectively as the "Plaintiffs."

The lawsuit also names as defendants "Unknown Pharmacy and Pharmacists; and Unknown Executioners and Drug Procurers." The Plaintiffs later filed a motion for expedited discovery to ascertain the identities of the unknown defendants and to serve them with process. *See* Tex. Code Crim. Proc. art. 43.14(b) (exempting from disclosure under PIA "any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution"). When this appeal was filed, the district court had not ruled on the Plaintiffs' discovery motion, and the motion remains pending.

administering lethal injection drugs," namely, pentobarbital. Among other things, they allege that the pentobarbital is acquired by the TDCJ Defendants without a prescription and is not tested or stored in compliance with the United States Pharmacopeia (USP) guidelines. They allege that because of the pentobarbital's age and improper storage, all the vials of pentobarbital in TDCJ's possession are expired and that the administration of expired pentobarbital is unpredictable, potentially less effective, and could cause painful side effects when injected during an execution.[3]

As relief, the Plaintiffs request the district court declare that the TDCJ Defendants have violated

(1) provisions of the Texas Pharmacy Act that prohibit procuring, possessing, distributing, or administering expired pentobarbital;

(2) other provisions of the TPA that prohibit compounding, procuring, possessing, distributing, and administering compound pentobarbital without a prescription, without subjecting it to the "standards and tests" required by the USP, and in excessive quantities;

(3) provisions of the Controlled Substance Act that prohibit dispensing, possessing, or administering pentobarbital—or any controlled substance— without a valid prescription;

(4) the Texas Food, Drug, and Cosmetic Act's prohibition on dispensing a controlled substance without a prescription and on receiving such a medication; and

(5) the prohibition in Section 38.11 of the Penal Code against possessing a controlled substance in a prison or providing it to a person in custody without a prescription.

---

[3] By expired, the Plaintiffs mean that the beyond-use dates on the vials in TDCJ's possession have passed. The beyond-use date is the "date or time after which the compounded sterile preparation shall not be stored or transported or begin to be administered to a patient" and "is determined from the date or time the preparation is compounded." 22 Tex. Admin. Code § 291.133(b)(9) (Texas State Bd. of Pharmacy, Pharmacies Compounding Sterile Preparations).

To remedy these violations, the Plaintiffs seek a permanent injunction prohibiting the TDCJ Defendants from "continuing to compound, procure, possess, distribute, or administer pentobarbital to the [Plaintiffs] in violation of the [Acts]."

The Texas Attorney General initially responded to the suit by seeking a writ of prohibition from the Court of Criminal Appeals. On January 4, 2023, that court granted relief and ordered the district court to "refrain from issuing any order purporting to stay" the pending executions. *In re State ex rel. Paxton*, No. WR-94,432-01, 2023 WL 110625, at *1 (Tex. Crim. App. Jan. 4, 2023) (orig. proceeding) (per curiam) (op., not designated for publication). On January 10, 2023, the district court issued a temporary injunction prohibiting the TDCJ Defendants from "administering or injecting" the inmates with pentobarbital unless that pentobarbital was stored in compliance with the USP guidelines and had not passed its beyond-use date at the time of the execution. The Court of Criminal Appeals vacated the temporary injunction. *In re State ex rel. Paxton*, No. WR-94,432-02, 2023 WL 151779, at *1 (Tex. Crim. App. Jan. 10, 2023) (orig. proceeding) (per curiam) (op., not designated for publication). In doing so, the court explained that the district court's injunction "circumvented this Court's mandates and the orders of the inmates' convicting courts" and violated its previous order "to refrain from issuing any order purporting to stay the executions of the various inmates." *Id.*

The TDCJ Defendants filed an answer and plea to the jurisdiction, asserting that the suit is barred by sovereign immunity. After the district court denied the plea to the jurisdiction, the TDCJ Defendants filed this interlocutory appeal.

**PLEA TO THE JURISDICTION**

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to the whether the asserted claims have merit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). When a plea to the jurisdiction challenges the sufficiency of the plaintiffs' pleadings, as is the case here, we must determine "if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)). In determining whether the plaintiff has met that burden, we liberally construe the pleadings in favor of jurisdiction, taking all factual assertions as true, and look to the pleader's intent. *Texas Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without affording the plaintiff an opportunity to replead. *Miranda*, 133 S.W.3d at 226. "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed de novo." *Id.*

When resolution of a jurisdictional challenge turns on interpretation of a statute, we also review these questions de novo. *Hegar v. American Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). Our goal in construing a statute is to give effect to the legislature's intent, "'which we ascertain from the plain meaning of the words used in the statute' because the best indicator of what the legislature intended is what it enacted." *Brazos Elec. Power Coop., Inc. v. Texas Comm'n on Envtl. Quality*, 576 S.W.3d 374, 384 (Tex. 2019) (quoting *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016)). We presume lawmakers chose

5

statutory language "with care and that every word or phrase was used with a purpose in mind." *Id.* (citing *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)). We do not interpret the meaning of individual provisions in isolation but "consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 184 (Tex. 2022).

## SOVEREIGN IMMUNITY AND ULTRA VIRES

On appeal, the TDCJ Officials argue that the district court erred in denying their plea to the jurisdiction because they are protected from suit by sovereign immunity and the Plaintiffs have failed to allege a claim that falls within the scope of the ultra vires exception.

The doctrine of sovereign immunity generally bars suits against the State or its agencies or subdivisions, absent a clear and unambiguous waiver of immunity by the Legislature. *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018). The doctrine operates to "shield the public from the costs and consequences of improvident actions of their governments." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Because sovereign immunity implicates a trial court's subject matter jurisdiction, it may be properly asserted in a plea to the jurisdiction. *Houston Belt & Terminal Ry.*, 487 S.W.3d at 160.

Even in the absence of a waiver of immunity, a "claim may proceed against a government official in his official capacity if the plaintiff successfully alleges that the official is engaging in ultra vires conduct." *Id.* The "basic justification" for the ultra vires exception to immunity is that ultra vires acts "should not be considered acts of the state at all." *Hall*, 508 S.W.3d at 238. Consequently, "ultra vires suits do not attempt to exert control over the state—they attempt to reassert the control of the state" over one of its agents. *Id.* (citing

*Heinrich*, 284 S.W.3d at 372). Conversely, if the plaintiff alleges, or ultimately can prove acts only within the officer's legal authority and discretion, the claim seeks "to control state action" and is barred by sovereign immunity. *Houston Belt & Terminal Ry.*, 487 S.W.3d at 158.

To fall within the ultra vires exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022) (citing *Heinrich*, 284 S.W.3d at 372). In this context, "ministerial acts" are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hall*, 508 S.W.3d at 238. On the other hand, an ultra vires claim based on actions taken "without legal authority" has two fundamental components: (1) "authority giving the official some (but not absolute) discretion to act" and (2) "conduct outside of that authority." *Id.* at 239. "[W]hether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue in any particular case." *Houston Belt & Terminal Ry.*, 487 S.W.3d at 164.

## DISCUSSION

In this case, the Plaintiffs contend that the TDCJ Officials have acted "without legal authority" in their procurement, storage, and administering of pentobarbital in lethal injections. Consequently, in analyzing whether the Plaintiffs have alleged a valid ultra vires claim we must first consider the scope of the TDCJ Officials' authority in conducting executions by lethal injections. *See Hall*, 508 S.W.3d at 234 ("natural starting point" of analyzing ultra vires claim is to analyze law governing official's authority).

7

The TDCJ Officials' grant of authority for conducting executions by lethal injection is found in the Texas Code of Criminal Procedure, Article 43.14, which states

> Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time after the hour of 6 p.m. on the day set for the execution, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised by the director of the correctional institutions division of the Texas Department of Criminal Justice.

Tex. Code Crim. Proc. art. 43.14(a). Under Article 43.14, the director of TDCJ's criminal division is authorized to "determine[]" the protocol for carrying out execution by lethal injection by a "substance or substances," *id.*, but is not required or authorized to use any particular substance, *see Ex parte Granviel*, 561 S.W.2d 503, 513 (Tex. Crim. App. 1978) (concluding failure to specify did not render statute unconstitutionally vague). In addition, Chapter 43 includes some procedural requirements for conducting executions, including the scheduling of the execution date, Tex. Code Crim. Proc. art. 43.141, the requirement of a warrant of execution, *see id.* art. 43.15, and the place of execution, *see id.* art. 43.19. Notably absent is any statutory requirement or authorization to use a particular substance or substances or to procure or store the substance or substances in a particular manner. As a state administrative agency, however, the TDCJ Officials' powers includes those implied powers that are reasonably necessary to carry out their statutory duties. *See San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 621 (Tex. 2020) (agencies and officials may "only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed" (citing *City of Sherman v. Public Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983))). Thus, we conclude that Article 43.14's broad grant of authority necessarily implies the power to select the substance or substances, to procure those substances, and to store them for use.

8

The Plaintiffs, however, do not contend that the TDCJ Officials' actions violate Article 43.14 on its face. Instead, the Plaintiffs' claims rest on their contention that the TDCJ Officials' actions in conducting executions by lethal injection violate the Texas Pharmacy Act; the Controlled Substances Act; the Texas Food, Drug, and Cosmetic Act; and the Texas Penal Code. Thus, in analyzing whether the Plaintiffs have sufficiently alleged that the TDCJ officials engaged in conduct outside of their authority, the operative question is whether and to what extent the TDCJ Officials' authority in exercising their implied powers under Article 43.14 is constrained by these statutes.

Statutes are presumed to be enacted or modified by the Legislature with knowledge of the existing law and subject to it unless the contrary is clearly indicated. *Dugger v. Arredondo*, 408 S.W.3d 825, 835 (Tex. 2013); *Texas Dep't of Ins. v. Texas Ass'n of Health Plans*, 598 S.W.3d 417, 423 (Tex. App.—Austin 2020, no pet.) (citing *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)); *Williams v. Williams*, 19 S.W.3d 544, 548 (Tex. App.—Fort Worth 2020, pet. denied). Thus, we construe latter enactments or modifications in light of and in harmony with existing law, as part of a general and uniform system of jurisprudence. *Fought v. Solce,* 821 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *McBride v. Clayton*, 166 S.W.2d 125 (1942). If the statutes are *in pari materia*, meaning they share a common purpose or object, the statutes are construed together, if possible, to give effect to both. *See* Tex. Gov't Code § 311.026(a) (codifying common-law doctrine of *in pari materia*); *Howlett v. Tarrant County*, 301 S.W.3d 840, 846 (Tex. App.—Fort Worth 2009, pet. denied) (explaining that doctrine of *in pari materia* applies when two statutes "share a common purpose or object"). However, if the statutes are irreconcilable, "the special or local provision controls as an exception to the general provision, unless the general provision

9

is the later enactment and the manifest intent is that the general provision prevail." *See id.* § 311.026(b).

Applying these principles of statutory construction, we cannot conclude that the portions of the Acts cited by the Plaintiffs constrain the TDCJ Officials' authority under Article 43.14. Article 43.14 was amended in 1977, making the State of Texas the second jurisdiction "to provide statutorily for execution of capital felony offenders by the intravenous injection of a lethal substance."[4] *Ex parte Granviel*, 561 S.W.2d at 507 (discussing amendment to article 43.14 and rejecting constitutional challenge). All the statutory provisions cited by and relied on by the Plaintiffs in support of their ultra vires claim were enacted after or have been modified since 1977. Article 43.14 specifically deals with the procurement and administration of drugs in a narrow set of circumstances—the use of drugs by TDCJ officials for the limited purpose of carrying out sentenced executions. On the other hand, the statutory provisions cited by the Plaintiffs have wider application, in wholly different sets of circumstances—the regulation of the profession of pharmacy; the use or non-use of drugs in the provision of healthcare and as consumer goods; and in the orderly administration of correctional facilities—and are generally aimed at regulating medical treatment as wells as protecting public health and safety.[5]

---

[4] Prior to the amendment, the method of execution in Texas was electrocution. *Ex parte Granviel*, 561 S.W.2d 503, 507 (Tex. Crim. App. 1978).

[5] The purpose of the Texas Pharmacy Act is to "promote, preserve, and protect the public health, safety, and welfare" through "effectively controlling and regulating the practice of pharmacy" and "licensing pharmacies engaged in the sale, delivery, or distribution of prescription drugs and devices used in diagnosing and treating injury, illness, and disease." Tex. Occ. Code § 551.002(c). Under the Pharmacy Act, a compounding pharmacy must "comply with applicable United State Pharmacopoeia guidelines, including testing requirements," *id.* § 562.153(2), and before dispensing a drug, "a prescription must be issued for a legitimate medical purpose by a practitioner acting in the usual course of the practitioner's professional practice," *id.* § 562.056(a-1). Similarly, the Controlled Substances Act generally provides that

10

Consequently, to the extent the Plaintiffs urge us to construe the cited statutory provisions as conflicting with Article 43.14's broad authority to conduct executions by lethal injunction, we decline to do so. *See Texas State Bd. of Chiropractic Exam'rs v. Abbott*, 391 S.W.3d 343, 349 n.4 (Tex. App.—Austin 2013, no pet.) ("Because these statutes are not *in pari materia*, do not share a common purpose, and are not intended to be construed together, it follows that one provision could not be considered as controlling over the other or as creating an exception to it."); *see Texas Ass'n of Acupuncture & Oriental Med. v. Tex. Bd. of Chiropractic Exam'rs*, 524 S.W.3d 734, 744 (Tex. App.—Austin 2017, no pet.) ("The adventitious occurrence of like or similar phrases, or even similar subject matter, in laws enacted for wholly different ends will not justify applying the doctrine [of *in pari materia*]."). Instead, we construe Article 43.14 as operating independently from the provisions of the Acts cited by the Plaintiffs. *See Texas State Bd. of Chiropractic Exam'rs*, 391 S.W.3d at 350 (harmonizing "apparently conflicting provisions so that every enactment is given effect" and concluding that provisions in occupations code granting to patient right of access to chiropractic records did not trump provision in Public Information Act granting to chiropractic board right to withhold contents of privileged investigation file). In the absence of a clear indication from the Legislature, we will not presume

---

no one may "manufacture, distribute, prescribe, possess, analyze, or dispense a controlled substance in this state" without registering with the Drug Enforcement Administration, Tex. Health & Safety Code § 481.061(a), and a practitioner "may not prescribe, dispense, deliver, or administer a controlled substance . . . except for a valid medical purpose and in the course of medical practice," *id.* § 481.071(a). The Controlled Substances Act defines "medical purpose" as "the use of a controlled substance for relieving or curing a mental or physical disease or infirmity." *Id.* § 481.002(27). The Texas Food, Drug, and Cosmetic Act prohibits "the introduction or delivery for introduction into commerce of any food, drug, device, or cosmetic that is adulterated or misbranded" and "the receipt in commerce of any food, drug, device, or cosmetic that is adulterated or misbranded." *Id.* § 431.021(a), (c). Finally, a person commits an offense under Section 38.11 of the Penal Code "if the person provides or possesses with intent to provide" a "controlled substance . . . to a person in the custody of a correctional facility . . . except on the prescription of a practitioner." Tex. Penal Code § 38.11(a)(1).

11

that the Legislature intended for the Acts to constrain the TDCJ Officials' otherwise broad authority under Article 43.14. *See id.* Because the Plaintiffs have failed to allege that the TDCJ Officials engaged in conduct that exceeds the scope of their authority to carry out executions by lethal injection under Article 43.14, we conclude that the Plaintiffs have failed to allege a valid ultra vires claim.[6]

Moreover, to prevail on an ultra vires claim, a plaintiff must establish it is entitled to prospective declaratory or injunctive relief restraining ultra vires conduct. *City of Houston v. Houston Mun. Employees Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). To this end, the Plaintiffs seek declarations that the TDCJ Defendants have engaged in conduct that violates the Acts and an injunction to prohibit the future administration of lethal-injection drugs that are compounded, procured, possessed, or distributed in violation of the Acts. Although the Plaintiffs are careful not to characterize their claim as an attempt to stay their executions, the effect of their request for injunctive relief would be to prevent the TDCJ Defendants from "administering lethal injection drugs" until they can demonstrate compliance with the Acts.

"The Texas Constitution bifurcates the civil and criminal law jurisdiction of the State, giving the Court of Criminal Appeals appellate jurisdiction 'in all criminal cases'" and the

---

[6] The TDCJ Defendants separately argue that even if the Plaintiffs have alleged a valid ultra vires claim, the district court erred in denying the plea to the jurisdiction as to the TDCJ because an ultra vires suit may not be brought against an agency. Plaintiffs do not dispute this point. The "proper defendant in an ultra vires action is the state official whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself." *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam). The agency retains immunity "because unlawful acts of officials are not acts of the State." *Patel v. Texas Dep't of Licensing & Reg.*, 469 S.W.3d 69, 76 (Tex. 2015). Consequently, we agree that even if the Plaintiffs had alleged valid ultra vires claim, the claim could not be brought against the agency itself. *See id.*; *Texas Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258–59 (Tex. 2010) (per curiam) (holding Department of Insurance was immune from suit alleging its officials exceeded their statutory authority).

Supreme Court of Texas "jurisdiction 'except in criminal law matters.'" *Texas Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 798 (Tex. 2021) (quoting Tex. Const. art. V, §§ 5(a), 3(a)). The Court of Criminal Appeals has long held that an injunction in a civil case that has the effect of staying an execution is a criminal law matter within its exclusive appellate jurisdiction. *See State ex rel. Holmes v. Honorable Court of Appeals for Third Dist.*, 885 S.W.2d 389, 394 (Tex. Crim. App. 1994), *rejected on other grounds*, *Ex parte Elizondo*, 947 S.W.2d 202, 206–07 (Tex. Crim. App. 1996), *superseded by statute as stated in Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim App. 2007). Because the relief sought by Plaintiffs, at least in part, is a stay of their executions based on the method of execution (i.e., using non-compliant or expired pentobarbital), their civil suit seeks an order that the district court has no jurisdiction to render. *See also Dearing v. Wright*, 653 S.W.2d 288, 289-90 (Tex. 1983) (explaining that "[u]nder our dual appellate system, we must concede to those courts the exclusive jurisdictional prerogative in criminal law matters our constitution requires that they exercise").

In concluding that the Plaintiffs' suit is barred by sovereign immunity, we do not mean to suggest that there is no limitation on TDCJ officials in their treatment of death-row inmates and administration of lethal injections. For example, "[a] death row inmate may attempt to show that a State's planned method of execution, either on its face or as applied to him, violates the Eighth Amendment's prohibition on cruel and unusual punishment." *Nance v. Ward*, 597 U.S. 159, 164 (2022) (recognizing that death-row inmate may bring Section 1983 claim to challenge method of execution). *But see State ex rel. Holmes*, 885 S.W.2d at (noting that injunction in civil case that has effect of staying an execution is a matter of criminal law). Similarly, Article 43.24 of the Code of Criminal Procedure provides that "[n]o torture, or ill treatment, or unnecessary pain, shall be inflicted upon a prisoner to be executed under the

13

sentence of the law." Tex. Code Crim. Proc. art. 43.24. The Plaintiffs' suit, however, is not based on alleged violations of the Eighth Amendment or Article 43.24. In fact, the Plaintiffs expressly state in their petition that they are not "arguing that the use of pentobarbital violates their state or federal constitutional rights to be free from cruel and unusual punishment."

Because the Plaintiffs' claims against the TDCJ Officials and the TDCJ are barred by sovereign immunity, the district court erred in denying their plea to the jurisdiction.

## CONCLUSION

We reverse the district court's order denying the plea to the jurisdiction and render judgment dismissing this case for want of jurisdiction.

_____
Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis
  Concurring and Dissenting Opinion by Justice Theofanis

Reversed and Rendered

Filed: July 12, 2024

14