## HILL v KOKOSKY

Docket No. 118393. Submitted June 19, 1990, at Detroit. Decided
   November 19, 1990, at 9:04 A.M. Leave to appeal sought.

Kelly Burston was admitted to Riverside Osteopathic Hospital
   with an incompetent cervix when she was twenty-two weeks
   pregnant. Her obstetrician contacted Mary Kokosky, M.D., and
   Moustafa Hassan, M.D., by telephone, seeking their opinions of
   the case on the basis of the case history. Kokosky and Hassan
   gave their opinions, but neither contacted Burston, examined
   her, or reviewed her chart. Approximately two weeks later,
   Burston gave birth to Thomas Hill, II, who suffers from cere-
   bral palsy, mental retardation, developmental delay, and severe
   respiratory problems, allegedly caused in part by the advice
   given by Kokosky and Hassan. Kelly Burston, for herself and
   as next friend of Thomas Hill, II, brought an action against
   Kokosky, Hassan, and others in the Wayne Circuit Court,
   alleging medical malpractice. The court, James A. Hathaway,
   J., granted summary disposition in favor of Kokosky and Has-
   san. The plaintiffs appealed.

The Court of Appeals held:

1. A professional physician-patient relationship is a legal
prerequisite to a professional malpractice cause of action
against a physician. In the absence of a referral, a formal
consultation, or some other contractual relationship, no physi-
cian-patient relationship arises from a treating physician's
solicitation of a colleague's informal opinion on patient treat-
ment. The telephone conversations between Burston's obstetri-
cian and Kokosky and Hassan did not give rise to a physician-
patient relationship between the plaintiffs and Kokosky and
Hassan. Summary disposition was properly granted.

2. The argument that Kokosky and Hassan may be liable to
the plaintiffs, even in the absence of a physician-patient rela-
tionship, under the principle that when a person chooses to act
gratuitously that person becomes subject to the common-law

REFERENCES
Am Jur 2d, Physicians, Surgeons, and Other Healers § 158.
See the Index to Annotations under Malpractice by Medical or
   Health Professions.

duty to act with care is rejected. For this argument to have merit, Kokosky and Hassan would have had to have been providing medical treatment when they talked with Burston's obstetrician.

Affirmed.

NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIAN-PATIENT RELATIONSHIP.

  A professional physician-patient relationship is a legal prerequisite to a professional malpractice cause of action against a physician; a physician-patient relationship exists where a doctor renders professional services to a person who has contracted for such services; thus, a doctor who is contacted by a patient's treating physician to discuss treatment alternatives owes no duty of care to the patient whose case is discussed.

*Bishop & Shelton, P.C.* (by *Ronald W. Carson*), for the plaintiffs.

*Feikens, Foster, Vander Male & DeNardis, P.C.* (by *L. Neal Kennedy* and *Susan L. Brown*), for the defendants.

Amicus Curiae:

*Kerr, Russell & Weber* (by *Richard D. Weber* and *Joanne Geha Swanson*), for Michigan State Medical Society.

Before: McDONALD, P.J., and MACKENZIE and WEAVER, JJ.

MACKENZIE, J. This is a medical malpractice action. Plaintiffs appeal as of right from an order granting summary disposition in favor of defendant doctors Mary Kokosky and Moustafa Hassan pursuant to MCR 2.116(C)(10). The Michigan State Medical Society has filed an amicus brief aligned with defendants' position. We affirm.

The basic issue in this case is whether a doctor who is contacted by a patient's treating physician

to discuss treatment alternatives owes a duty of care to the patient whose case is discussed.

On January 3, 1986, Kelly Burston, approximately twenty-two weeks pregnant, was admitted to Riverside Osteopathic Hospital with an incompetent cervix. During Burston's hospitalization at Riverside, her obstetrician, Dr. William Hole, contacted defendants to ask their opinions about the case. Defendants, who are physicians at Oakwood Hospital, spoke with Dr. Hole over the telephone and gave him their opinions based on the case history Hole related to them. Dr. Hole did not refer Burston to either defendant. Neither defendant contacted Burston, examined her, or reviewed her chart.

Burston gave birth to Thomas Hill, II, on January 16, 1986. Thomas suffers from cerebral palsy, mental retardation, developmental delay, and severe respiratory problems. Plaintiffs allege that Thomas' injuries were caused in part by defendants' substandard advice to Dr. Hole during their telephone conversations and that defendants are liable to plaintiffs for this alleged malpractice.

The existence or nonexistence of a legal duty is a question of law for the court to decide. See *Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d 759 (1977). Duty is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. *Moning, supra,* pp 438-439. Without a legal duty there is no actionable negligence. *Duvall v Goldin,* 139 Mich App 342, 347; 362 NW2d 275 (1984), lv den 422 Mich 976 (1985).

In physician malpractice cases, the duty owed by the physician arises from the physician-patient relationship. *Rogers v Horvath,* 65 Mich App 644, 647; 237 NW2d 595 (1975), lv den 396 Mich 845

(1976). Accordingly, a professional physician-patient relationship is a legal prerequisite to basing a cause of action in professional malpractice against a physician. See *Rogers, supra,* p 646. A physician-patient relationship exists where a doctor renders professional services to a person who has contracted for such services. *Rogers, supra,* pp 646-647. See also anno: *What constitutes physician-patient relationship for malpractice purposes,* 17 ALR4th 132.

Whether a physician-patient relationship arises from a treating physician's solicitation of a colleague's informal opinion on patient treatment is an issue of first impression in this state. Other jurisdictions have considered the question, however. In the absence of a referral, a formal consultation, or some other contractual relationship, these jurisdictions have concluded that no physician-patient relationship arises in this context. In *Ingber v Kandler,* 128 AD2d 591-592; 513 NYS2d 11 (1987), the court stated:

> The record before us reveals that, at most, the respondent gave an informal opinion to a fellow physician regarding a case with which the respondent had no connection whatsoever. Indeed, there has been no showing that the respondent had any contact with the patient, saw any records relating to the case, or even knew the patient's name. Upon these facts, it cannot possibly be found that a relationship existed between the respondent and the plaintiff's decedent that gave rise to a duty on the part of the respondent toward the deceased infant.

Similarly, in *Oliver v Brock,* 342 So 2d 1, 4 (Ala, 1976), the court stated:

> We fail to see any evidence from which it could

be concluded that [defendant physician] has consented to treat the child, or any from which it could be inferred that he consented to act in a consulting capacity. . . .

[The treating physician] denies that he ever asked [the defendant] to take part in the treatment of the child and denies that [the defendant] did so. He admits making only a casual reference to the condition of this patient in the abstract, without mentioning her name, during the course of a conversation with [the defendant] about another patient, and that based upon his description of the injury and the treatment, [the defendant] responded that the treatment seemed to be correct. Whether or not a physician-patient relationship exists depends upon the facts in each case, but some facts must be supplied to support a conclusion that the relationship has been created. In this case, there are no facts which can support the conclusion that the relationship ever existed between [the defendant] and the patient.

In this case, there is nothing in the record to suggest that a physician-patient relationship existed between plaintiffs and defendants. Neither defendant knew, examined, or spoke with plaintiffs. Burston was not referred to defendants for treatment or consultation. Plaintiffs did not employ defendants, nor did they seek medical advice or treatment from defendants. Defendants' medical opinions were addressed directly to Dr. Hole as a colleague, and not indirectly to plaintiffs as patients. The opinions were not in the nature of prescribed course of treatment, but were recommendations to be accepted or rejected by Dr. Hole as he saw fit. In short, the telephone conversations between Dr. Hole and defendants did not give rise to a physician-patient relationship between plaintiffs and defendants. Summary disposition was proper.

Plaintiffs argue that, even in the absence of a physician-patient relationship, defendants may be liable to them under the principle that when a person chooses to act gratuitously, that person becomes subject to the common-law duty to act with care, citing *Green Construction Co v Williams Form Engineering Corp,* 506 F Supp 173 (WD Mich, 1980). The flaw in this argument is that it assumes defendants were providing medical treatment when they talked with Dr. Hole. The record does not sustain such an assumption. Unquestionably, defendants' recommendations were part of the body of information available to Dr. Hole as he treated Burston. We do not believe that this limited and remote connection to the case can be equated with "treatment," however, any more than the author of a medical treatise or article which Dr. Hole might have consulted could be considered to have "treated" plaintiffs.

In *Rainer v Grossman,* 31 Cal App 3d 539; 107 Cal Rptr 469 (1973), a treating physician presented to the defendant, a lecturing physician, the facts of a patient's history and her x-rays. The defendant gave an opinion that surgery was indicated. The treating physician subsequently recommended surgery to the patient. After undergoing surgery, the patient brought suit against the defendant. Although it was conceded that the defendant's opinion became part of the total information upon which the treating physician drew in caring for his patient, the California court affirmed summary judgment in favor of the defendant.

> In the usual case of medical malpractice the duty of care springs from the physician-patient relationship which is basically one of contract. . . . It is clear that the imposition on defendant of a duty of care to plaintiff here cannot rest on the physician-patient relationship. There was none.

\* \* \*

Defendant here was dealing with medical doctors who were not under his direction or control. He was entitled to assume that these doctors were cognizant of the circumstances under which the various cases were discussed, i.e., without defendant having personally examined the patient, and would themselves in dealing directly with their patients rely on their own ultimate opinions following proper medical procedures. Imposition of liability under these circumstances would not be prophylactic but instead counter-productive by stifling efforts at improving medical knowledge. [31 Cal App 3d 543-544.]

The *Rainer* court's observations are well-taken. The extension of potential malpractice liability to doctors with whom a treating physician has merely conferred, without more, would unacceptably inhibit the exchange of information and expertise among physicians. This would benefit neither those seeking medical attention nor the medical profession. Under these circumstances, we decline to apply the duty of care which plaintiffs urge.

Affirmed.