Eduardo LOPEZ, et al.

v.

Salar Akhtar AZIZ, M.D.

No. 04-92-00677-CV.

Court of Appeals of Texas, San Antonio.

April 30, 1993.

---

Mary Wilson, Clem Lyons, Southers & Lyons, Inc., San Antonio, for appellants.

Bruce E. Anderson, Brin & Brin, P.C., San Antonio, for appellee.

Before REEVES, C.J., and BUTTS and RICKHOFF, JJ.

## OPINION

BUTTS, Justice.

This appeal arises from a medical malpractice suit. Appellants are the surviving husband and children of Angelita Lopez. Appellants brought suit against Dr. Salar Akhtar Aziz, alleging that he consulted with Mrs. Lopez's treating physician on her behalf and with her implied consent, and that he failed to recommend correct treatment. Appellants appeal from a summary judgment granted in favor of Dr. Aziz. The sole ground stated in the motion for summary judgment was that Dr. Aziz owed Mrs. Lopez no duty because there was no physician-patient relationship between Dr. Aziz and Mrs. Lopez. We affirm.

## I. FACTS

Our record shows that on October 5, 1988, Mrs. Lopez was admitted to Val Verde Hospital and was placed under the care of Dr. Manuel A. Martinez, Jr. for delivery of her eleventh child.[1] Dr. Martinez consulted once by telephone with Dr. Aziz, an OB–GYN specialist in Uvalde. Dr. Martinez testified that although he was Mrs. Lopez's primary physician and ultimately responsible for her medical care, he sought and followed Dr. Aziz's advice. That advice included complete laboratory work-up (blood analysis, urinalysis, and coagulation studies) which would take approximately 24 hours to complete. Appellants alleged that early on October 7, Mrs. Lopez began to suffer seizures. An emergency cesarean section was performed and a viable baby was delivered. Mrs. Lopez's condition continued to deteriorate, however, and she died that afternoon.

Dr. Aziz's affidavit in support of his motion for summary judgment states that Mrs. Lopez was never a patient of his: She never sought medical treatment or professional services of any kind from him; he never examined her; she never came to his office and never spoke with any of his employees; she was never referred to him for treatment either by a private physician or an emergency room physician; he never gave her any medical advice or treatment; and he never sent her or any member of her family a bill. Dr. Aziz also stated that he has never been associated with Dr. Martinez in a professional capacity; he did not cover for Dr. Martinez; and he did not share patients with Dr. Martinez.

■ Appellants attached two deposition excerpts to their response to the motion for summary judgment. The excerpts were accompanied by the affidavit of appellants' attorney stating that she had personal knowledge that the witnesses testified as indicated in the attached copies. Neither excerpt was accompanied by a court reporter's certificate. Dr. Aziz asserts that the deposition excerpts were not properly authenticated and should not be considered as summary judgment proof.

■ A defect in the authentication of an attachment is waived if not pointed out to the trial court, so long as the attachment is supported by a properly authenticated affidavit. *Kotzur v. Kelly*, 791 S.W.2d 254, 256 (Tex.App.—Corpus Christi 1990, no writ). The deposition excerpts were supported by the properly authenticated affidavit of appellants' attorney. Dr. Aziz did not object at trial that the excerpts them-

---

1. Mrs. Lopez suffered from pre-eclampsia, which is a toxemia of late pregnancy, character-ized by hypertension, proteinuria, and edema.

selves were not authenticated by the court reporter. That objection is now waived. *See id.;* TEX.R.CIV.P. 166a(f). We will consider the deposition excerpts as proper summary judgment evidence.[2]

## II. ISSUES

Appellants challenge the granting of the summary judgment on five grounds: (1) Dr. Aziz did not establish that he was entitled to judgment as a matter of law; (2) there are genuine issues of material fact concerning the existence of a physician-patient relationship; (3) there is a genuine issue of material fact concerning whether Dr. Aziz owed a duty to Mrs. Lopez; (4) deposition testimony raised a genuine issue of material fact concerning whether Dr. Aziz owed a duty to Mrs. Lopez; and (5) the summary judgment evidence established that there was a consensual physician-patient relationship created by the acts of Drs. Aziz and Martinez. These points of error can be summarized as stating two basic issues: (1) whether Dr. Aziz negated the existence of a physician-patient relationship as a matter of law; and (2) whether Dr. Aziz owed a duty to Mrs. Lopez even in the absence of a physician-patient relationship.

## III. STANDARD OF REVIEW

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon,* 690

S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311.

## IV. DUTY IN ABSENCE OF PHYSICIAN–PATIENT RELATIONSHIP

The essence of a medical malpractice action is the existence of a duty flowing from the physician-patient relationship. *Salas v. Gamboa,* 760 S.W.2d 838, 839 n. 1 (Tex. App.—San Antonio 1988, no writ); *Childs v. Weis,* 440 S.W.2d 104, 106 (Tex.Civ. App.—Dallas 1969, no writ).

[A] physician is liable for malpractice or negligence only where there is a physician/patient relationship as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill, and there is a breach of professional duty to the patient.

*Salas v. Gamboa,* 760 S.W.2d at 840. Further, article 4590i of the revised civil statutes implicitly recognizes that a physician-patient relationship must exist before a health care liability claim may be asserted. *Id.* at 839 n. 1. Thus, Dr. Aziz was entitled to summary judgment if he negated any physician-patient relationship as a matter of law.

## V. PHYSICIAN–PATIENT RELATIONSHIP

■ We first note that the parties are in agreement that the mere fact that a physician does not have direct physical contact with a patient does not preclude the existence of a physician-patient relationship. *See Dougherty v. Gifford,* 826 S.W.2d 668, 674–75 (Tex.App.—Texarkana 1992, no writ); TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.03(a)(2) (Vernon Supp. Pamphlet 1993). For example, in *Dougherty,* the defendant physician had no direct contact with the patient, but did contract to perform (and actually performed) services as a pathologist for the benefit of the patient. *Dougherty v. Gifford,* 826 S.W.2d at 674–75. The fact that he contracted for those services with another doctor did not negate the physician-patient relationship because the ser-

---

**2.** We will not, however, consider the hospital records that were filed with the trial court after the summary judgment was granted, signed, and filed.

vices were for the benefit of the patient and were contracted with the patient's implied consent. *Id.* Thus, the consensual basis for a physician-patient relationship was established. *Id.*

The present case is distinguishable from *Dougherty* and other cases in which a physician contracts with another to perform services for the benefit of a patient.[3] As noted by appellants,

> [A] consensual relationship between a physician and a patient may exist where *others have contracted* with the physician on the patient's behalf.... The important fact in determining whether the relationship is a consensual one ... is not *who contracted* for the service but whether it was *contracted* for with the express or implied consent of the patient or for his benefit.... Where ... healthcare services are rendered on behalf of the patient and are done for the patient's benefit, a consensual physician-patient relationship exists for the purposes of medical malpractice.

*Dougherty v. Gifford,* 826 S.W.2d at 675 (quoting *Walters v. Rinker,* 520 N.E.2d 468, 472 (Ind.Ct.App.1988)) (emphasis added).

In the present case, there is no evidence that Dr. Aziz contracted with Dr. Martinez, or anyone else, to perform any services for Mrs. Lopez. Dr. Aziz did not accept any work relating to Mrs. Lopez's case, did not conduct any laboratory tests or review the results of tests performed by others, did not prepare any reports, and did not bill either Mrs. Lopez or Dr. Martinez. *Compare Dougherty v. Gifford,* 826 S.W.2d at 674. Dr. Aziz did no more than answer the professional inquiry of a colleague. There is no evidence of any consensual basis for the existence of a physician-patient rela-

tionship arising out of that one telephone conversation.

We have found no Texas case directly on point with the case at bar. Other jurisdictions, however, have addressed this issue favorably to the position taken by Dr. Aziz. *See Flynn v. Bausch,* 238 Neb. 61, 469 N.W.2d 125 (1991); *Oliver v. Brock,* 342 So.2d 1 (Ala.1976); *Ingber v. Kandler,* 128 A.D.2d 591, 513 N.Y.S.2d 11 (N.Y.App.Div. 1987); *Rainer v. Grossman,* 31 Cal.App.3d 539, 107 Cal.Rptr. 469 (1973). The Michigan case of *Hill By Burston v. Kokosky,* 186 Mich.App. 300, 463 N.W.2d 265 (1990), is very similar to the case before us. The issue presented to the court was "whether a doctor who is contacted by a patient's treating physician to discuss treatment alternatives owes a duty of care to the patient whose case is discussed." *Id.* at 266. The defendant doctors each spoke to the treating physician over the telephone and gave their opinions based on the case history provided by the treating physician. The treating physician did not refer the patient to the defendant doctors, and the defendant doctors did not contact the patient, examine her, or review her chart. The court held as follows:

> In this case, there is nothing in the record to suggest that a physician-patient relationship existed between plaintiffs and defendants. Neither defendant knew, examined, or spoke with plaintiffs. [The patient] was not referred to defendants for treatment or consultation. Plaintiffs did not employ defendants, nor did they seek medical advice or treatment from defendants. Defendants' medical opinions were addressed directly to [the treating physician] as a colleague, and not indirectly to plaintiffs as patients. The opinions were not in the na-

---

**3.** The case at bar is also distinguishable from those cases cited by Dr. Aziz in which the defendant doctor affirmatively refused to give advice or treatment. *See Fought v. Solce,* 821 S.W.2d 218 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Salas v. Gamboa,* 760 S.W.2d 838 (Tex. App.—San Antonio 1988, no writ); *Childs v. Weis,* 440 S.W.2d 104 (Tex.Civ.App.—Dallas 1969, no writ). The defendant doctors in these cases not only did not perform any services, they did not offer any advice.

The present case is also distinguishable from those cases cited by Dr. Aziz in which a defendant doctor is hired by a third party to examine the patient for purposes other than treatment. *See e.g., Wilson v. Winsett,* 828 S.W.2d 231 (Tex. App.—Amarillo 1992, writ granted); *Keene v. Wiggins,* 69 Cal.App.3d 308, 138 Cal.Rptr. 3 (Cal. Ct.App.1977); *Rogers v. Horvath,* 65 Mich.App. 644, 237 N.W.2d 595 (Mich.Ct.App.1975).

ture of prescribed course of treatment, but were recommendations to be accepted or rejected by [the treating physician] as he saw fit. In short, the telephone conversations between [the treating physician] and defendants did not give rise to a physician-patient relationship between plaintiffs and defendants. Summary disposition was proper.

*Id.* at 267. The court further noted,

The extension of potential malpractice liability to doctors with whom a treating physician has merely conferred, without more, would unacceptably inhibit the exchange of information and expertise among physicians. This would benefit neither those seeking medical attention nor the medical profession.

*Id.* at 268.

We find the opinion of the court in *Kokosky* persuasive. To expose physicians such as Dr. Aziz to liability for simply conferring with a colleague would be detrimental in the long run to those seeking competent medical attention and is contrary to the public policy of this state. Dr. Aziz did not contact, examine, or treat Mrs. Lopez, nor was Mrs. Lopez referred to him for any treatment or consultation. Dr. Aziz's opinions regarding the proper course of treatment were addressed to Dr. Martinez. Dr. Martinez, as Mrs. Lopez's treating physician, was free to accept or reject those opinions as he saw fit. Even Dr. Martinez acknowledged that he was ultimately responsible for Mrs. Lopez's treatment. Further, in his deposition testimony, Dr. Martinez stated that he and Dr. Aziz "discussed ... several options that we could do with this patient;" that Dr. Martinez thought "it was rational to take this conservative approach;" that Dr. Aziz advised him and made suggestions, and Dr. Martinez accepted that advice and followed those suggestions. Nothing in the record suggests that either doctor contemplated that Dr. Aziz's comments were binding on Dr. Martinez or that Dr. Aziz had any authority or responsibility to control the course of Mrs. Lopez's treatment. On the contrary, Dr. Martinez's testimony shows that he retained responsibility for Mrs. Lopez's care, he weighed Dr. Aziz's advice, and he made a decision to accept it.

We hold that the summary judgment evidence established as a matter of law that there was no physician-patient relationship between Dr. Aziz and Mrs. Lopez. The summary judgment was properly granted. Points of error one through five are overruled. The judgment is affirmed.