OJA v KIN

Docket No. 200217. Submitted December 10, 1997, at Detroit. Decided April 7, 1998, at 9:00 A.M. Leave to appeal sought.

Tammy Oja, as personal representative of the estate of Stephen C. Burge, brought an action in the Oakland Circuit Court against Steven Kin, D.O., and others, alleging medical malpractice. The decedent had sustained a gunshot wound to the jaw and had been taken to a hospital emergency room where defendant Kin was the ear, nose, and throat (ENT) specialist on call. Kin, in three telephone calls to him by the attending emergency room resident, had declined to go to the hospital to treat the decedent. On each occasion, Kin had told the resident that he was ill and that the resident should contact another ENT specialist. The decedent was transferred to another hospital and died while undergoing surgery. The court, Robert L. Templin, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court correctly ruled that there was no a physician-patient relationship between Kin and the decedent on which a medical malpractice claim could be based. A physician-patient relationship is contractual and requires the consent, express or implied, of both the doctor and the patient. A doctor's consent to form a physician-patient relationship may be implied where the doctor has participated in the patient's diagnosis and treatment. A doctor's consent may not be implied merely from the doctor's status of being on call. In this case, defendant Kin, in declining to appear when summoned to the hospital, did not provide care, treatment, or advice regarding the decedent's medical condition.

2. Assuming that there was a contract between defendant Kin and the hospital where he was on call, the plaintiff failed to prove that the decedent was an intended beneficiary of that contract with a right to enforce the contract.

Affirmed.

1. NEGLIGENCE — MEDICAL MALPRACTICE — ON-CALL PHYSICIANS — PHYSICIAN-PATIENT RELATIONSHIP.

The formation of a physician-patient relationship, a prerequisite to an action for medical malpractice, requires the express or implied

consent of both the doctor and the patient; a doctor's consent may be implied from participation in a patient's diagnosis and treatment, but may not be implied merely from the doctor's status of being on call; no relationship is formed where a doctor declines a summons to attend a person in need of medical care and does not participate in that person's diagnosis, care, or treatment.

2. CONTRACTS — THIRD-PARTY BENEFICIARIES.

The law presumes that a contract has been executed for the benefit of the parties thereto; a person who claims to be a third-party beneficiary of the contract must prove that the person was an intended beneficiary; incidental benefit does not give rise to third-party beneficiary status (MCL 600.1405; MSA 27A.1405).

*Chambers Steiner* (by *Darrell M. Amlin*), for Tammy Oja.

*Ferriby & Houston* (by *Robert L. Ferriby, Jr.*, and *Susan J. Zbikowski*), for Steven Kin, D.O., and ENT Surgical Associates, P.C.

Before: SAWYER, P.J., and WAHLS and REILLY, JJ.

WAHLS, J. In this medical malpractice action, plaintiff, as personal representative of the decedent's estate, appeals as of right from a trial court order granting summary disposition in favor of defendants Steven Kin, D.O., and ENT Surgical Associates, P.C., pursuant to MCR 2.116(C)(8) and (C)(10). We affirm.

This action arose out of the death of plaintiff's decedent, Stephen Craig Burge, on November 30, 1993. The decedent was brought to the emergency room at Oakland General Hospital (Osteopathic) on the evening of November 29, 1993, for treatment of a gunshot wound to his right jaw. Defendant Steven Kin, D.O., was the ear, nose, and throat physician on call that evening at Oakland General Hospital. The resident physician on duty that evening telephoned Dr. Kin at home and requested his presence at the

hospital to assist in the care and treatment of the decedent. Dr. Kin informed the resident that he was not feeling well and would not go to the hospital. He further indicated that the resident should contact another physician to assist her. The resident contacted Dr. Kin on two other occasions throughout the night regarding this patient and each time Dr. Kin responded that he was unable to assist or come to the hospital and informed the resident that she would have to find another physician to take his place.

After examination by a number of physicians at Oakland General, the patient was transferred to Detroit Receiving Hospital. He died on the operating table at Detroit Receiving in the early morning hours of November 30, 1993. This lawsuit followed.

On appeal, plaintiff argues that the trial court erred in granting summary disposition for defendants. Specifically, plaintiff contends that she stated a legally cognizable claim and raised a genuine issue of material fact regarding the existence of a physician-patient relationship between Dr. Kin and the decedent. We disagree.

The sole issue on appeal is whether plaintiff can establish that Dr. Kin owed the decedent a duty of care. Plaintiff argues two different grounds for finding such a duty. First, she argues that a physician-patient relationship existed between Dr. Kin and the decedent because Dr. Kin rendered medical advice and treatment during his telephone conversations with the emergency room resident. Plaintiff contends that once it was established that this relationship existed, a legal duty arose requiring Dr. Kin to act in accordance with the recognized standard of care. Alternatively, plaintiff argues that a contractual relationship

between Dr. Kin and the hospital, in conjunction with the hospital by-laws, created a legal duty requiring Dr. Kin to respond when called, or to secure another physician to act in his place. We address these arguments separately.

The existence or nonexistence of a legal duty is a question of law for the court to decide. *Hill v Kokosky*, 186 Mich App 300, 302; 463 NW2d 265 (1990). Without the existence of a legal duty, there can be no actionable negligence. *Id.* In medical malpractice actions, the duty owed by a physician arises from the physician-patient relationship. *Id.* Thus, a physician-patient relationship is a legal prerequisite to a medical malpractice cause of action. *Id.* at 303. "A physician-patient relationship exists where a doctor renders professional services to a person who has contracted for such services." *Id.*

Here, plaintiff never alleged that there was a physician-patient relationship between the defendants and the decedent, and she thereby failed to plead sufficient facts to support a malpractice claim. In addition, even if plaintiff were allowed to amend her pleadings, her claim could not be supported. As discussed below, defendants did not render any treatment to plaintiff's decedent, nor did they owe him any duty.

The question of when a physician-patient relationship arises has rarely been addressed in our published decisions. The most recent cases dealing with this subject, *Hill, supra,* and *NBD Bank, NA v Barry*, 223 Mich App 370; 566 NW2d 47 (1997), involved factual situations different from that presented by the instant case. The patients in those cases were attempting to sue doctors whose only connection to

their treatment were conversations with their treating physicians. The conversations in those cases apparently did not relate to emergency room care, and the defendant doctors were not on-call. Here, Dr. Kin was on call and was contacted by a resident in the emergency room. While these distinctions have not been addressed in Michigan,[1] they are potentially significant.

In *McKinney v Schlatter*, unpublished opinion of the Ohio Court of Appeals, issued February 18, 1997 (Docket No. CA96-05-100); 1997 WL 67702, the Ohio Court of Appeals addressed the same issue we face today. There, the patient sought treatment in an emergency room for acute chest and abdominal pain. He was examined by the attending emergency room physician, who ordered several tests and then telephoned the cardiologist who was on call. The two physicians discussed the case, and the cardiologist opined that the problem was not cardiac in nature and recommended an additional test. After this additional test was performed, the attending emergency room physician called the cardiologist back, and the cardiologist again suggested that he did not think the patient had a cardiac problem. The patient was discharged and died a short time later of a "dissecting aortic aneurysm," apparently a cardiac problem. The decedent's

---

[1] Plaintiff cites two unpublished cases from this Court, which she claims address the significance of a doctor's on-call status. See *Austin v Sukumaran*, unpublished opinion per curiam of the Court of Appeals, issued July 21, 1993 (Docket No. 142582); *Weisenbach v Hills & Dales Gen Hosp*, unpublished opinion per curiam of the Court of Appeals, issued June 25, 1996 (Docket No. 173866). These cases are not binding precedent. Moreover, these cases are simply inapplicable to the present case; one dealt with the "Good Samaritan" statute, *Weisenbach, supra*, while the other merely suggested that a physician's "on-call" status could create a duty to a patient, without so holding, *Austin, supra*.

estate then sued the two doctors and the hospital for medical malpractice and wrongful death. The trial court granted a directed verdict for the cardiologist, finding that he owed no duty to the decedent. The plaintiff appealed, and the Ohio Court of Appeals reversed. The court framed the issue as follows:

> The existence of a duty of care, in a case such as this, depends upon whether there was a physician-patient relationship between the decedent and the defendant-physician. A physician-patient relationship arises out of a consensual contract of employment, express or implied, under which the patient seeks medical assistance and the physician agrees to render treatment.
>
> The issue presented to us is whether a telephone conversation between an attending emergency room physician and an on call consulting physician with regard to an emergency room patient creates a physician-patient relationship between the on call physician and the patient whom the on call physician does not know, has not spoken with, and has not previously treated. This is an issue of first impression in Ohio. [*Id.* at *2 - *3 (citations omitted).]

Obviously, this is precisely the question presented by plaintiff's first argument in the instant case. After reviewing several cases from other jurisdictions, including our own holding in *Hill, supra,* the court in *McKinney* concluded:

> We therefore hold, and in doing so are mindful that we are elaborating in the field of medical malpractice, that a physician-patient relationship can exist by implication between an emergency room patient and an on call physician who is consulted by the patient's physician but who has never met, spoken with, or consulted the patient when the on call physician (1) participates in the diagnosis of the patient's condition, (2) participates in or prescribes a course of treatment for the patient, and (3) owes a duty to the hospital, staff or patient for whose benefit he is on call.

> Once an on call physician who has a duty to the hospital, its staff or patients is contacted for the benefit of an emergency room patient, and a discussion takes place between the patient's physician and the on call physician regarding the patient's symptoms, a possible diagnosis and course of treatment, a physician-patient relationship exists between the patient and the on call physician. [*Id.* at \*6.]

Obviously, *McKinney* is not binding precedent. However, we believe that the test in *McKinney* properly recognizes that a physician's on-call status alone is insufficient to warrant a finding that the physician impliedly consented to a physician-patient relationship.

A physician-patient relationship is contractual and requires the consent, express or implied, of both the doctor and the patient. *Hill, supra* at 303.[2] The consent of the patient is generally implied. The question is, Under what circumstances can the doctor's consent be implied? As the panel in *Hill* properly recognized, merely listening to another physician's description of a patient's problem and offering a professional opinion regarding the proper course of treatment is not enough. Under those circumstances, a doctor is not agreeing to enter into a contract with the patient. Instead, she is simply offering informal assistance to

---

[2] As the Texas Supreme Court in *St John v Pope*, 901 SW2d 420, 423 (Tex, 1995), noted:

> [P]rofessionals do not owe a duty to exercise their particular talents, knowledge, and skill on behalf of every person they encounter in the course of the day. As is true of all callings, physicians are not obligated to practice their profession or render services to everyone who asks. It is only with a physician's consent, whether express or implied, that the doctor-patient relationship comes into being.

a colleague.[3] At the other end of the spectrum, a doctor who is on call and who, on the phone or in person, receives a description of a patient's condition and then essentially directs the course of that patient's treatment, has consented to a physician-patient relationship. The difficulty arises in determining where, between these two extremes, a physician-patient relationship (and thus a duty) arises. This inquiry is necessarily conducted case by case, but we do not believe that a physician's on-call status alone is enough to support an implied consent to a physician-patient relationship. Thus, we conclude that an implied consent to a physician-patient relationship may be found only where a physician has done something, such as participate in the patient's diagnosis and treatment, that supports the implication that she consented to a physician-patient relationship.[4] We conclude that such participation is necessary for, but by itself does not establish, an implied physician-patient relationship. See *Hill, supra.*

Here, it is undisputed that Dr. Kin's only opportunity to treat the decedent came during three phone calls, all from the same emergency room resident. With his motion for summary disposition below, Dr.

---

[3] Finding consent under these circumstances would not only be illogical, it would also be counterproductive. As the Illinois Court of Appeals noted, finding a physician-patient relationship under these circumstances "would have a chilling effect upon the practice of medicine. It would stifle communication, education and professional association, all to the detriment of the patient. The likely effect . . . would be that such informal conferences would no longer occur." *Reynolds v Decatur Memorial Hosp*, 227 Ill App 3d 80, 86; 214 Ill Dec 44; 660 NE2d 235 (1996).

[4] See *Ortiz v Shah*, 905 SW2d 609, 611 (Tex App, 1995) ("The [physician-patient] relationship is a consensual one and, when no prior relationship exists, the doctor must take some action to treat the patient before the relationship can be established.").

Kin filed an affidavit stating unequivocally that he never provided any care, treatment, or advice regarding the decedent's condition. Dr. Kin averred that he told the emergency room resident that he was ill and that she should contact another physician. He denied ever accepting the decedent as a patient. This affidavit is essentially unrebutted. Plaintiff points to the deposition of the emergency room resident as evidence that Dr. Kin consented to a physician-patient relationship. However, we find nothing in her deposition that contradicts Dr. Kin's affidavit on this point. Thus, unlike the on-call physician in *McKinney*, Dr. Kin did not take any action that would support a finding of implied consent. Under these circumstances, the trial court properly found no genuine issue of material fact regarding the existence of a physician-patient relationship.

The remaining question is whether the relationship between the hospital and Dr. Kin can somehow support a finding of a duty owed by Dr. Kin to the decedent. Plaintiff argues that Dr. Kin's contractual relationship with the hospital, combined with the hospital by-laws, imposed a duty on Dr. Kin to come to the hospital when he was called, or to arrange for coverage. Dr. Kin may very well have owed such a duty to the hospital. However, a contract between the hospital and Dr. Kin does not necessarily create rights in third-parties such as the decedent. Where the decedent was not a party to the contract, the personal representative of the decedent's estate has no right to enforce it unless she can show that the decedent was an intended third-party beneficiary. *Alcona Community Schools v Michigan*, 216 Mich App 202, 204; 549 NW2d 356 (1996). Third-party beneficiary law in Mich-

igan is controlled by statute. MCL 600.1405; MSA 27A.1405 provides in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

The test created by this statute is objective; the subjective intent of the parties to the contract is irrelevant. Where the contract in question is primarily for the benefit of the parties thereto, the fact that a third person is incidentally benefited does not give that third person rights as a third-party beneficiary. *Alcona, supra* at 205.

Here, assuming arguendo that there was a contract between the hospital and Dr. Kin,[5] plaintiff failed to show that the decedent was an intended third-party beneficiary of that contract. The law presumes that a contract has been executed for the benefit of the parties thereto, thus plaintiff had the burden of proving that the decedent was an intended beneficiary of the contract. *Koenig v South Haven*, 221 Mich App 711, 716; 562 NW2d 509 (1997). Plaintiff failed to meet this burden. The only evidence plaintiff produced on this point came in the form of (1) a copy of the hospital's by-laws,[6] and (2) the deposition testimony of the hos-

---

[5] We offer no opinion regarding the existence, terms, or possible breach of such a contract. We simply hold that, even if a contract existed, plaintiff has failed to show that she has any right to sue for its breach.

[6] The applicable by-law simply required a physician to "discharge any on-call responsibilities."

pital's medical director.[7] However, none of this evidence suggested that the alleged contract was primarily for the benefit of anyone but the parties to it. Thus, plaintiff could not show that the decedent was an intended third-party beneficiary of the alleged contract between the hospital and defendants.

Because plaintiff failed to plead the existence of a physician-patient relationship, and because there was no duty owed by defendants to the decedent, summary disposition was properly granted for defendants pursuant to MCR 2.116(C)(8) and (C)(10).

Affirmed.

---

[7] The medical director testified that the hospital required an on-call physician to discharge his responsibilities under the by-laws, and that such responsibilities included either taking part in the care of a patient if called, or arranging for coverage.